NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MICHAEL RAMSEY**,

                Petitioner,

      v.

**THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY & BRUCE DAVIS**,

                Respondents.

Civil Action No. 19-1978 (ZNQ)

**OPINION**

**QURAISHI, District Judge**

Petitioner Michael Ramsey, a prisoner at New Jersey State Prison in Trenton, New Jersey, is proceeding *pro se* with the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Habeas Pet., ECF No. 1.)  Respondents filed a response opposing relief, (Resp'ts' Resp., ECF No. 15), and Petitioner filed a reply, (Pet'r's Reply to Resp'ts' Resp., ECF No. 30).  For the reasons expressed below, the Court will deny the Petition and will not issue a certificate of appealability.

## I.      BACKGROUND

In 2006, Petitioner shot and killed Terrell Spruill in a drive-by shooting in Franklin Township, New Jersey.  *See State v. Ramsey*, No. A-2635-14T1, 2016 WL 3408407, at *1 (N.J. Super. Ct. App. Div. June 22, 2016).  A grand jury charged Petitioner with first-degree murder in violation of N.J. Stat. § 2C:11-3(a)(1) to -3(a)(2) ("Count One") and possession of a handgun for

an unlawful purpose in violation of N.J. Stat. § 2C:39-4(a) ("Count Two").  (Indictment, ECF No. 7-43, at 44.)[1]

Prior to trial, the prosecutor offered Petitioner a plea bargain of thirty years in prison without the possibility of parole.  (*See* Pretrial Mem., ECF No. 30, at 23–28.)  The offer was memorialized in a pretrial memorandum that Petitioner, his counsel, the prosecutor, and the trial judge signed.  (*Id.*)  It is undisputed that, although the pretrial memorandum correctly indicated that Petitioner faced a potential life sentence subject to an "85% Law Term" mandatory period of parole ineligibility under the No Early Release Act ("NERA"), N.J. Stat. § 2C:43-7.2, the memorandum incorrectly indicated that the mandatory period of parole ineligibility was thirty years and that the maximum parole ineligibility period was thirty-five years.  (*See id.*)  Further, during a pretrial hearing, the trial judge also incorrectly stated that: "[I]f you go to trial and you lose at trial and you're found guilty at trial, then you're looking at up to life in prison on the murder one alone, life in prison, *30 years to be served without parole*.  You understand that?"  (Pretrial Hr'g Tr., ECF No. 7-7, at 24:7-11 (emphasis added).)  Petitioner responded: "I understand that." (*Id.* at 24:12.)  In fact, under NERA, Petitioner faced a life sentence with a mandatory parole ineligibility period of approximately sixty-three years.  *See Ramsey*, 2016 WL 3408407, at *1. Petitioner ultimately rejected the plea bargain, and the matter proceed to trial.  *Id.*

The Superior Court of New Jersey – Appellate Division (the "Appellate Division") summarized the relevant facts drawn from evidence presented at trial as follows:

> On the evening of August 10, 2006, Terrell Spruill, then fifteen-years old, was shot to death on a street corner in Franklin Township by a person in a passing car.  At the trial, defendant . . . claimed he was not at the scene and did not commit the murder, and that the murder was committed by a third party, Tyrone Chiles.

---

[1] For pin cites to ECF Nos. 1, 7-29, 7-33, 7-43, 30, the Court relies on the pagination automatically generated by the CM/ECF.

Detective Patrick Colligan testified that when he arrived at the scene, he talked to Dyshon Reeves, a bystander, who was a possible eyewitness.    According to Colligan, Reeves was "pacing and screaming" about how he was going to kill "M-Dot," which is defendant's street name.

Reeves testified that defendant, who he knew from the Grove area of town where Reeves used to live, was in the back seat of a car, and pointed a gun directly at him, as the car passed by.  Upon noticing that the gun was pointed at him, Reeves "stepped back" and put his hands above his head.  He stated he was not sure if it was defendant, but he heard someone in the car say, "that's Dyshon, that's Dyshon," and the car kept going.

Gary Marroquin also testified that prior to the incident he, Reeves, and Curtis Prescott were standing about five feet from the curb on the sidewalk of Victor Street in front of the victim's house. According to Marroquin, a car drove up the street at an average speed and slowed down upon approaching them.  He saw defendant with "his whole body  like up to his stomach . . . hanging out" of the passenger window of the back seat with what appeared to be a gun in his hands.  At this point, Marroquin was not positive of what he heard but it seemed like someone inside the vehicle said, "nah, nah, like it seemed like they knew Dyshon," and realized it was him. Upon hearing this, defendant retreated back in the car and the car drove off.

Prescott also testified that a man leaned out the window of a passing car with a gun and, after hearing someone in the car say "nah, nah," the person pulled the gun "back in the car," and the car continued to drive down the street.

In the meantime, while the three men were standing on the sidewalk of Victor Street, Spruill and Jamyllah Booker had been talking at the nearby corner of Matilda Avenue and Mark Street.  They were joined by Diana Williams.  According to Booker, she, Williams, and Spruill had been talking for about fifteen minutes when she heard "three to four" gunshot "sounds."  After hearing the shots, Booker, Spruill, and Williams all started to run.  Booker testified that she stopped and turned around upon hearing Spruill say he had been shot.

Williams testified for the defense that she "bumped into" Spruill and Booker on the corner of Matilda Avenue and Mark Street, and joined their conversation.  During the conversation, Williams noticed a car

come around driving slowly, although she did not see who was in the car. According to Williams, after about five minutes, the car she had noticed earlier came around again. The second time around, the car "slowed down and then it stopped" at which point she heard four gunshots. In her statement to the police after the incident, Williams indicated that the shooter "reached out of the window of the car [from the chest up] and he shot" Spruill. Although she could not make any identification at the trial, [at a show-up following defendant's arrest, she initially told police that she was "60 percent" sure that defendant shot Spruill but, shortly thereafter, she told police] . . . that Tyrone Chiles was in the car and had shot the victim.

Eric Anderson was called by the State. He was in the car with defendant and Stacia Simms during the shooting, and gave a statement to the police on August 15, 2006. In his statement, he indicated that on the night of the incident, he saw defendant "pull a gun out and shoot it when he was in the back seat." Anderson said he heard three or four shots being fired and he saw that "[d]efendant's hand, arm, and body" "up to his upper chest" were out the window. Anderson also told Detective Colligan that they drove past the victim and the two girls once, and after driving past them[,] defendant wanted to go around again. During the second time around, defendant fired the shots. However, at trial, Anderson testified that he saw and recalled very little from the night in question, and the statements he had provided on August 15, 2006, were not true.

Simms, the driver of the vehicle, also gave a statement to the police that she saw defendant in possession of a firearm and gave a description of the firearm. Simms also indicated in her statement that they passed by the area where the victim and the two girls were standing twice. She stated that the second time around "the guy got shot" and she heard what sounded like firecrackers. Moreover, Simms stated that she heard a girl scream, and as she was driving away[,] she heard defendant "laughing in the car." However, like Anderson, Simms testified at the trial that the statement she had given previously was false.

The victim was transported to Robert Wood Johnson Hospital in New Brunswick, but died the same night. The medical examiner concluded that the cause of the victim's death was a "[g]unshot wound of the abdomen."

Tyrone Chiles and his sister, Constance, testified for the State that he was at the Menlo Park Mall at the time of the shooting. Moreover, the defendant's palm print was found on the back

> passenger window of the vehicle after it was located, and the defense
> acknowledged he had previously been in the car.

*State v. Ramsey*, 1 A.3d 796, 797–99 (N.J. Super. Ct. App. Div. 2010).

The jury found Petitioner guilty on both counts.  (Verdict Form, ECF No. 7-43, at 45.)  The trial judge initially sentenced Petitioner to a term of life imprisonment with thirty years of parole ineligibility.  (J. of Conviction, ECF No. 7-43, at 46–47.)

Petitioner appealed his conviction and sentence.  (Pet'r's Direct Appeal Br., ECF No. 7-24.)  On direct appeal, Petitioner asserted, among other things, that the trial court erred in not instructing the jury on the lesser-included offense of aggravated manslaughter.  (*Id.*)  The Appellate Division affirmed the conviction but remanded for resentencing because the trial judge had not applied NERA to calculate the period of parole ineligibility.  *Ramsey*, 1 A.3d at 805.  On February 25, 2011, the trial judge resentenced Petitioner to life imprisonment subject to the mandatory eighty-five percent period of parole ineligibility pursuant to NERA, or approximately sixty-three years of parole ineligibility.  *Ramsey*, 2016 WL 3408407, at *1.

On April 4, 2011, Petitioner filed a petition for post-conviction relief ("PCR").  (PCR Pet., ECF No. 7-29, at 20–22.)  In his PCR petition, Petitioner argued, among other things, that his trial counsel rendered ineffective assistance by failing to file any pretrial motions to challenge Diana Williams' initial identification of him and by failing to object to the State's introduction of an allegedly misleading and prejudicial photograph of him.  (*Id.* at 21.)  With the assistance of counsel, Petitioner later added a claim that his trial counsel was ineffective for misadvising him during plea negotiations regarding the maximum sentence that he faced on the murder charge and his exposure to deportation if he pleaded guilty.  (*See* Pet'r's Letter Br. in Supp. of PCR Pet., ECF No. 7-33.)  The PCR court conducted an evidentiary hearing as to Petitioner's claim of ineffective assistance during plea negotiations.  (*See* PCR Hr'g Trs., ECF Nos. 20–21.)  Ultimately, the

Honorable Paul W. Armstrong, J.S.C. denied the petition as meritless.  (First PCR Ct.'s Op. Den. PCR Pet., ECF No. 7-35.)

Petitioner appealed the denial of his PCR petition.  (*See* Pet'r's Br. on First PCR Appeal, ECF No. 7-38.)  The Appellate Division found that Judge Armstrong "made no factual findings as to whether trial counsel was ineffective during plea negotiations and whether but for counsel's deficiencies, defendant would have pled guilty and suffered prejudice as a result of going to trial." *Ramsey*, 2016 WL 3408407, at *3.  Accordingly, the Appellate Division reversed in part and remanded for further proceedings.  *Id.*

On December 23, 2016, the Honorable Robert A. Ballard, Jr., J.S.C. rendered another decision, this time supported by factual findings, denying Petitioner's PCR petition.  (Second PCR Ct.'s Op. Den. PCR Pet., ECF No. 7-41.)  Petitioner appealed Judge Ballard's decision, raising a single claim: "since [Petitioner] was misinformed by the trial court, prosecutor and defense counsel of the mandatory period of parole ineligibility for a life sentence and as a result rejected a plea offer, the denial of his petition for post-conviction relief was error."  (Pet'r's Br. on Second PCR Appeal, ECF No. 7-43.)

On April 5, 2018, the Appellate Division affirmed Judge Ballard's decision.  *See State v. Ramsey*, No. A-3130-16T2, 2018 WL 1630265, at *3 (N.J. Super. Ct. App. Div. Apr. 5, 2018). Petitioner proceeded to petition the New Jersey Supreme Court for certification, raising the same single claim that Petitioner raised in his second PCR appeal.  (*See* Pet'r's Br. in Supp. of Pet. for Certification, ECF No. 7-47.)  The New Jersey Supreme Court summarily denied this claim on October 16, 2018.  *State v. Ramsey*, 195 A.3d 528, 528 (N.J. 2018).

On December 26, 2018, Petitioner submitted to this Court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The petition raises the following grounds for relief:

6

Ground One: Defendant was misinformed by the trial court, prosecutor, and defense counsel of the mandatory period of parole ineligibility for a life sentence and, as a result, rejected a plea offer.

Ground Two: Trial counsel was ineffective for failing to file any pre-trial identification motions when witness [sic] identified [Petitioner].

Ground Three: Trial counsel was ineffective for failing to object to [the state's introduction of a misleading and prejudicial photograph of Petitioner during trial].

Ground Four: [The trial court erred in failing to instruct the jury on] aggravated manslaughter.

(*See* Habeas Pet. 6–12.)

On December 23, 2019, Respondents filed a response to the Petition. (*See* Resp'ts' Resp.) Petitioner replied on August 9, 2021. (*See* Pet'r's Reply to Resp'ts' Resp.) Accordingly, the parties have fully briefed the issues, and they are ripe for determination.

## II.   LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a district court "shall entertain an application for writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Habeas petitioners bear the burden of establishing their entitlement to relief for each claim presented in a petition based upon the record that was before the state court. *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013).

Moreover, district courts are required to give great deference to the determinations of the state trial and appellate courts. *Renico v. Lett*, 559 U.S. 766, 772–73 (2010). Specifically, district courts must defer to the "'last reasoned' decision of the state courts on the petitioner's claims." *Simmons v. Beard*, 590 F.3d 223, 231–32 (3d Cir. 2009). Where a claim has been adjudicated on

the merits by the state courts, the district court shall not grant an application for writ of habeas corpus unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States: or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"Contrary to clearly established Federal law" means the state court applied a rule that contradicted the governing law set forth in United States Supreme Court precedent or that the state court confronted a set of facts that were materially indistinguishable from United States Supreme Court precedent and arrived at a different result than the Supreme Court. *Eley*, 712 F.3d at 846 (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)). "Clearly established federal law for purposes of [Section 2254(d)(1)] includes only the holdings, as opposed to the dicta of the United States Supreme Court's decisions." *See Woods v. Donald*, 575 U.S. 312, 316 (2015). An "unreasonable application" of clearly established federal law is an "objectively unreasonable" application of law, not merely an erroneous application. *Eley*, 712 F.3d at 846 (quoting *Renico*, 559 U.S. at 773).

"When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods*, 575 U.S. at 316. Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28

U.S.C. § 2254(e)(1).  Furthermore, "[w]hen a state court arrives at a factual finding based on credibility determinations, the habeas court must determine whether that credibility determination was unreasonable."  *See Keith v. Pennsylvania*, 484 F. App'x 694, 697 (3d Cir. 2012) (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006)).

## III.   DISCUSSION

### A.  Ineffective Assistance of Trial Counsel During Plea Negotiations (Ground One)

In his first claim, Petitioner alleges that his trial counsel rendered ineffective assistance during plea negotiations by misinforming him that the maximum sentence he faced for murder was life imprisonment with a thirty-year period of parole ineligibility when, in fact, he faced life imprisonment with an approximately sixty-three-year period of parole ineligibility.  (*See* Habeas Pet. 6–7; Pet'r's Reply 16–20.)  Petitioner also alleges that his counsel misadvised him to reject the plea offer to avoid deportation when, in fact, he was a United States citizen.[2]  (*See* Pet'r's Reply 11, 17.)

The two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington* generally governs claims, like Ground One, asserting ineffective assistance of counsel.  466 U.S. 668, 687 (1984).  To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient."  *Id.*  "To establish deficient performance, a person

---

[2] According to Petitioner, he was born in Jamaica and brought to the United States by his mother at age nine.  (Pet'r's Certification in Supp. of PCR Br., ECF No. 7-34 ¶¶ 5, 10.)  At that time, his mother was a United States citizen.  (*Id.* ¶ 10.)  Petitioner alleges that he believed he was a United States citizen, and even though he informed his counsel of these facts, his counsel incorrectly advised him that he was still subject to deportation because U.S. Immigration and Customs Enforcement ("ICE") officials had filed a detainer against him after his arrest.  (*Id.*)  After the trial judge initially sentenced Petitioner, he received a letter from ICE stating that ICE "has no further interest in [Petitioner] because it appears he is indeed a U.S. citizen that derived under his mother's citizenship."  (*See* Pet'r's Letter Br. in Supp. of PCR Pet. 4–5.)

challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011). A petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687. To establish prejudice, a petitioner "need not establish that the attorney's deficient performance more likely than not altered the outcome" of the petitioner's case, but only that there is a reasonable probability of such an effect upon the outcome of the case. *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).

In *Lafler v. Cooper*, the Supreme Court clarified "how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of the plea offer and the defendant is convicted at the ensuing trial." 566 U.S. 156, 163 (2012). The Supreme Court held that a defendant is not precluded from establishing *Strickland* prejudice arising from ineffective assistance during plea bargaining merely because he is later convicted at a fair trial. *Id.* at 166. Instead, the Supreme Court explained that, where a defendant rejects a plea bargain upon ineffective advice of counsel, a defendant must show that:

> [B]ut for the ineffective advice of counsel, there is a reasonable probability that the plea offer would have been presented to the court, (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164.

With these principles in mind, the Court proceeds to analyze Ground One under AEDPA. As the New Jersey Supreme Court summarily denied Ground One on PCR appeal, *see Ramsey*, 195 A.3d at 528, the Court "look[s] through" the summary denial and applies AEDPA's standards to the Appellate Division's determination on PCR appeal. *See Simmons*, 590 F.3d at 231–32. The

10

Appellate Division denied Ground One pursuant to New Jersey Rule 2:11-3(e)(2).[3]  *See State v. Ramsey*, No. A-3130-16T2, 2018 WL 1630265 (N.J. Super. Ct. App. Div. Apr. 5, 2018).  It also offered the following additional explanation: "We discern no abuse of discretion in the denial of defendant's PCR petition following an evidentiary hearing, and affirm substantially for the reasons set forth in Judge Ballard's thorough written opinion.  We are satisfied that defendant received the effective assistance of counsel in connection with the plea negotiations."  *Id.*

Because the Appellate Division affirmed "substantially for the reasons set forth" by the PCR trial court, this Court also considers the reasoning of that court.  *See, e.g.*, *Harris v. Nogan*, No. 14-5408, 2017 WL 5451746 (D.N.J. Nov. 14, 2017) (considering the reasoning of the PCR trial court where the Appellate Division affirmed based on New Jersey Rule 2:11-3(e)(2) and substantially for the reasons stated by the PCR trial Court).  Judge Ballard determined that Petitioner's trial counsel's performance during plea negotiations was "more than satisfactory" based on his finding that counsel "correctly advised [Petitioner] of the potential outcome at trial, including sentencing for a life term; advised him of the inherent risks of proceeding with trial; and further advised him that the case should not proceed to trial in his opinion."  (Second PCR Ct.'s Op. Den. PCR Pet. 18–19.)

Judge Ballard also determined that Petitioner failed to demonstrate by a reasonable probability that, but for counsel's alleged errors, the results of the proceeding would have been different.  (*Id.* at 21–22.)  On this point, Judge Ballard found that Petitioner presented no credible evidence "to demonstrate any connection between the alleged deficiencies of defense counsel[]

---

[3] New Jersey Rule 2:11-3(e)(2) provides that "when in an appeal in a criminal . . . matter, the Appellate Division determines that some or all of the arguments made are without sufficient merit to warrant discussion in a written opinion, the court may affirm by specifying such arguments and quoting this rule and paragraph."

and [Petitioner]'s decision to proceed to trial" and that it was Petitioner's "continued and relentless belief in his innocence that led to the decision to [reject the pela offer and] proceed to trial," rather than any defect in counsel's performance.  (*Id.* at 19, 21–22.)

Petitioner contends that the state court decisions "[were] most certainly contrary to and or an unreasonable application of *Lafler v. Cooper*, 566 U.S. [156], 132 S. Ct. 1376 (2012)."  (Habeas Br. 7.)  Petitioner's argument fails, however, because he fails to demonstrate how the state courts' decisions ran afoul of *Lafler*.  (*See id.*)  The state courts did not find a lack of prejudice merely because Petitioner was later convicted at a fair trial.  (*See* Second PCR Ct.'s Op. Den. PCR Pet. 18–22.)  Rather, the state courts determined that Petitioner failed to demonstrate that he would have accepted the plea offer even if his counsel correctly informed him of his potential exposure. (*Id.*)  That determination is consistent with *Lafler*.  *See Lafler*, 566 U.S. at 164 (stating that, to demonstrate prejudice during plea negotiations, a defendant must demonstrate that he would have accepted the plea but for counsel's ineffective advice).

Moreover, the state court decisions were not based on an unreasonable determination of the facts presented in the proceedings.  First, Petitioner fails to rebut with clear and convincing evidence any of the individual factual determinations that the Appellate Division adopted.  *See Lambert v. Blackwell*, 387 F.3d 210, 235 (3d Cir. 2004) (considering both Section 2254(d)(2)'s reasonableness determination, which turns on a consideration of the totality of the "evidence presented in the state-court proceeding," and Section 2254(e)(1)'s presumption of correctness, which contemplates a challenge to the state court's individual factual determinations, in applying AEDPA's deference to state courts' factual determinations).  For example, Petitioner challenges the state courts' findings that his trial counsel effectively advised him regarding the potential sentences he faced and that he should accept the plea offer.  (*See* Habeas Br. 6.)  The only evidence

12

that Petitioner sets forth to rebut these findings, however, are the undisputed inaccuracies in the pretrial memorandum, his counsel's testimony at the PCR hearing conceding that the pretrial memorandum could have been confusing to a person not trained in the law, and his own self-serving testimony that his counsel advised him to reject the plea offer to avoid deportation. (*See* Pet'r's Reply 17.)  This showing does not amount to clear and convincing evidence because Petitioner's trial counsel also credibly testified that he explained to Petitioner the potential sentences he faced, including the mandatory period of parole ineligibility, that Petitioner told him that he was a Jamaican citizen, and, regardless, that he implored Petitioner to take the plea bargain. (July 15, 2014 PCR Hr'g Tr., ECF No. 7-20, at 57:10–59:13.)

By way of another example, Petitioner also fails to rebut the state courts' finding that his decision to proceed to trial was based on his relentless belief in his innocence rather than the alleged ineffective assistance.  Petitioner points only to his own testimony as evidence that his decision to proceed to trial was based on trial counsel's misinformation.  (Pet'r's Reply 17.) Specifically, Petitioner points to his statement that:

> I wanted to take a plea, because the judge told me that I was looking at 30 to life if I lost on the murder trial.  So I would have taken a plea.  But because of the immigration situation, I wanted to go to trial to prove my innocence so I could stay in this country.

(*Id.* (citing July 15, 2014 PCR Hr'g Tr. 30:16-23)).  But Petitioner also testified that he believed he was innocent, that he believed that his case improved as trial approached, and that his improving odds played a role in his decision to go to trial.  (July 15, 2014 PCR Hr'g Tr. 35:17-36:15, 37:11-38:22.)  Moreover, Petitioner and his trial counsel testified that Petitioner would not take any plea deal unless it was 20 years of exposure or less.  (*See id.* at 38:23-39:7.)  Thus, Petitioner fails to demonstrate by clear and convincing evidence that his decision to proceed to trial was based on the alleged ineffective assistance of his trial counsel.  *See* 28 U.S.C. § 2254(e)(1).

13

Second, the totality of the evidence indicates that the state courts' decisions were reasonable. *See Lambert*, 387 F.3d at 235. It was reasonable for the state courts to determine that Petitioner's counsel's performance during plea negotiations was more than satisfactory, notwithstanding the undisputed errors in the pretrial memorandum, because there was sufficient evidence indicating that counsel properly advised Petitioner. For example, as noted above, Petitioner's trial counsel testified that he explained to Petitioner the potential sentences he faced, including the mandatory period of parole ineligibility, and that he implored Petitioner to take the plea bargain. (July 15, 2014 PCR Hr'g Tr., ECF No. 7-20, at 57:10–59:13.) Although this evidence did not compel the result the state courts reached, as Petitioner's own testimony suggested otherwise, it was reasonable and within the state courts' province to weigh the evidence and reach the conclusion they did. This is particularly true here because, as Judge Ballard correctly noted, there is a "strong presumption that the attorney's action fell within a wide range of reasonable professional conduct," (Second PCR Ct.'s Op. Den. PCR Pet. 13 (citing *Strickland*, 466 U.S. at 675–76, 679)), and Petitioner offered little more than his own word in attempting to overcome this presumption. (*See* Pet'r's Reply 17.)

It was also reasonable for the state courts to determine that Petitioner failed to demonstrate prejudice. The only evidence that Petitioner offered to demonstrate that he would have accepted the plea deal had he been properly advised was his own self-serving testimony. (Habeas Pet. 6–7; Pet'r's Reply 17.) The veracity of that testimony, however, was called into question by other evidence tending to suggest that Petitioner would have rejected the deal regardless. (July 15, 2014 PCR Hr'g Tr. 35:17-36:15, 37:11-38:22.) It was reasonable to determine that, given the conflicting evidence, Petitioner failed to demonstrate prejudice.

14

Accordingly, Plaintiff fails to demonstrate that the state court decisions were contrary to, or an unreasonable application of, clearly established federal law, or that the state court decisions were based on an unreasonable determination of facts. *See* 28 U.S.C. § 2254(d)(1)-(2). Therefore, the Court denies Petitioner habeas relief on Ground One. *Id.*[4]

---

[4] Petitioner also alleges that the trial judge and prosecutor misinformed him as to the mandatory parole ineligibility period, but it is not clear whether Petitioner intended to set forth separate claims against them or merely provided this information to buttress his ineffective assistance claim. (*See* Habeas Pet. 6–7.)  To the extent that this Court could construe Ground One as asserting claims based on the trial court and the prosecutor's actions in addition to an ineffective assistance of trial counsel claim, the Court cannot grant Petitioner habeas relief because Petitioner failed to exhaust these claims. *See* 28 U.S.C. § 2254(b)(1)(A).

To meet the exhaustion requirement, a petitioner must "fairly present" his federal claims to each level of the state courts empowered to hear them, either on direct appeal or in collateral post-conviction proceedings. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999).  This means that the petitioner must "present a federal claim's factual and legal substance to the state courts in a manner that puts [the state courts] on notice that a federal claim is being asserted." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).  Here, Petitioner failed to exhaust claims against the trial judge or prosecutor because he did not raise them before the PCR trial court.  (*See* PCR Pet.; Pet'r's Letter Br. in Supp. of PCR Pet.)

Nevertheless, a habeas court can, if appropriate, deny a petitioner's unexhausted claims on the merits pursuant to 28 U.S.C. § 2254(b)(2).  *See Taylor v. Horn*, 504 F.3d 416, 427 (3d Cir. 2007). Where the state courts have not "reached the merits of a claim thereafter presented to a federal habeas court," the federal court must "conduct a *de novo* review over pure legal questions and mixed questions of law and facts . . . ." *Id.* at 429.  Even on *de novo* review of a habeas claim, however, the state court's factual determinations are still presumed to be correct, unless a petitioner rebuts them with clear and convincing evidence. *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).

In this case, the claims against the trial court or prosecutor fail under a *de novo* review pursuant to the harmless error doctrine.  The harmless error doctrine provides that, when raised on collateral review, errors of even a constitutional dimension will be considered harmless and thus will not warrant habeas relief "unless [the alleged constitutional error] had a substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Pliler*, 551 U.S. 112, 116 (2007).

As noted above, the PCR trial court found that Petitioner's decision to proceed to trial was based on his relentless belief in his innocence rather than on any misunderstanding of the mandatory parole ineligibility period, and Petitioner failed to rebut this finding with clear and convincing evidence.  (Second PCR Ct.'s Op. Den. PCR Pet. 19, 21–22.)  Thus, even on *de novo* review, the Court must accept that finding as true.  *See Appel*, 250 F.3d at 210.

**B. Ineffective Assistance of Trial Counsel for Failing to File Pre-Trial Identification Motion (Ground Two)**

In Ground Two, Petitioner asserts that his trial counsel was ineffective for failing to file a pretrial motion for a *Wade* hearing[5] to challenge Diana Williams' initial identification of him as the shooter. (Habeas Pet. 8–9.) Following the shooting, police transported Williams to the location where police apprehended Petitioner and conducted a show-up. *Ramsey*, 1 A.3d at 798 n.1. Police showed Williams several individuals, and Williams told police she was "60 percent" sure that Petitioner was the shooter. *Id.* Shortly thereafter, however, Williams told police that Tyrone Chiles was in the car and had shot the victim. *Id.* at 798. Although Williams could not make any identification at trial, Sergeant Darin Russo testified that Williams had initially identified Petitioner as the shooter at the show-up. (*See* Apr. 2, 2008 Trial Tr., ECF No. 7-14, at 122:17–125:22.)

As an initial matter, the Court cannot grant Petitioner relief on Ground Two because Petitioner failed to exhaust this claim before the state courts. *See* 28 U.S.C. § 2254(b)(1)(A). Petitioner failed to appeal the Appellate Division's denial of Ground Two to the New Jersey Supreme Court. (*See* Pet'r's Br. in Supp. of Pet. for Certification.) Nonetheless, the Court proceeds to analyze the claim *de novo. See* 28 U.S.C. § 2254(b)(2); *Taylor*, 504 F.3d at 429; *see*

---

As such, even if the trial court and prosecutor erred in misinforming Petitioner as to his sentence exposure, and even if that error was of a constitutional dimension, the error was harmless because Petitioner's decision to go to trial was based on his belief in his innocence rather than the result of misinformation about his sentencing exposure. (*See* Second PCR Ct.'s Op. Den. PCR Pet. 19, 21–22.) Accordingly, to the extent that Petitioner intended to raise such claims, the Court dismisses them as meritless.

[5] A "*Wade* hearing" generally refers to a hearing at which a party contests the admissibility of identification evidence. *See United States v. Wade*, 388 U.S. 218 (1967).

*also Strickland*, 466 U.S. at 698 (noting that ineffective assistance claims present mixed questions of law and fact).

As noted above, the *Strickland* two-prong test governs Petitioner's ineffective assistance of counsel claims, including Ground Two. *Strickland*, 466 U.S. at 687. Thus, to prevail on Ground Two, Petitioner must demonstrate deficient performance and prejudice from his trial counsel's failure to file a motion for a *Wade* hearing. *Id.*

Here, Petitioner fails to demonstrate either deficient performance or prejudice from his trial counsel's failure to file a motion for a *Wade* hearing. The Petition is completely devoid of any legal reasoning or argument and merely states, in conclusory fashion, that counsel's "failure to challenge Ms. Williams identification constituted ineffective assistance of counsel." (Habeas Pet. 8–9.) Petitioner's claim fails for this reason alone. *See Richter*, 562 U.S. at 103 (stating that it is the petitioner's burden to demonstrate that he is entitled to habeas relief).

Moreover, Petitioner would not have been able to demonstrate prejudice even if he tried. Assuming, *arguendo*, that Petitioner could establish deficient performance from counsel's failure to file a motion for a *Wade* hearing and that the trial court would have excluded evidence regarding Williams' identification of Petitioner, there is not a reasonable probability that it would have altered the outcome of the case because there was other strong evidence to prove that Petitioner shot and killed Terrell Spruill. For example, multiple witnesses testified that, moments before the shooting, they saw Petitioner hanging out the right rear window of a car pointing a gun at them a few blocks away from the shooting. (*See* April 1, 2008 Trial Tr., ECF No. 7-13, at 34:2–37:19, 150:21–151:2.) Stacia Simms provided a sworn statement to police three days after the incident indicating that she was driving past the location where Spruill was shot at about the time he was shot, that Petitioner was in the back seat of the car she was driving with a firearm in his possession,

17

that she heard what sounded like firecrackers, and that, after the sound, Petitioner was laughing. (*Id.* at 99:17–108:7.)  Erik Anderson provided a taped statement to the police five days after the shooting indicating that he was in the car with Stacia Simms and Petitioner at the time and location of the shooting, that Petitioner was leaning out the window of the back seat, and that Petitioner pulled out a gun and shot it.  (*Id.* at 220:5–228:6.)  Although Simms and Anderson recanted some of these statements during trial, the prosecutor effectively called into question the credibility of their in-court testimony.  (*See, e.g., id.* at 99:17–108:7.)  Finally, forensic investigation revealed Petitioner's palm print on the rear right window of Simms' car.  (*See* Apr. 3, 2008 Trial Tr., ECF No. 7-15, at 40:22–25.)  Accordingly, there is not a reasonable probability that the exclusion of evidence regarding Williams' identification of Petitioner would have altered the outcome of the trial, *see Nix*, 475 U.S. at 175, and, as Petitioner does not and could not demonstrate prejudice, the Court denies Petitioner habeas relief on Ground Two.

### C.  Ineffective Assistance of Trial Counsel for Failing to Object to Introduction of Misleading and Prejudicial Photograph (Ground Three)

In Ground Three, Petitioner contends that his trial counsel was ineffective for failing to object to the State's introduction of an allegedly prejudicial and misleading photograph during trial.  (Habeas Pet. 10.)  Specifically, Petitioner asserts that:

> [D]uring the course of the trial[,] the Prosecutor showed a photograph of [Petitioner] from a previous arrest to a State's witness on direct examination.  The photograph was extremely misleading and ultimately prejudicial because the photograph . . . depicted [Petitioner] wear[ing] clothing that resemble[s] the description given in the crime.  The photograph was used in such a way that it could have led the jury to conclude that the witnesses made a positive identification.

(*Id.*)

Once again, the Court cannot grant Petitioner relief on Ground Three because Petitioner failed to exhaust this claim. *See O'Sullivan*, 526 U.S. at 847. Petitioner failed to appeal the Appellate Division's denial of Ground Three to the New Jersey Supreme Court. (*See* Pet'r's Br. in Supp. of Pet. for Certification.) Nonetheless, the Court proceeds to analyze Ground Three *de novo*. *See* 28 U.S.C. § 2254(b)(2); *Taylor*, 504 F.3d at 429; *see also Strickland*, 466 U.S. at 698.

As Ground Three constitutes an ineffective assistance of counsel claim, Petitioner must demonstrate deficient performance and prejudice from his trial counsel's failure to object to the introduction of the photograph. *Strickland*, 466 U.S. at 687. As an initial matter, it is not entirely clear which photograph Petitioner contends was prejudicial and misleading. (*See* Habeas Br. 10.) During trial, the State introduced two photographs of Petitioner, S-10[6] and S-45.[7] However, regardless of which photograph Petitioner meant to refer to, Petitioner fails to carry his burden of demonstrating prejudice.

Even if counsel had a basis to object to the introduction of the photographs, and even if the trial court would have excluded the photographs, Petitioner fails to demonstrate that there is a reasonable probability that the outcome of the case would have been different. *Nix*, 475 U.S. at 175. Petitioner merely alleges that "the photograph was used in such a way that it could have led

---

[6] The State introduced S-10 during its direct examination of Detective Patrick Colligan. (*See* Apr. 2, 2008 Trial Tr.) Detective Colligan testified that Simms indicated that Erik Anderson and "M Dot" were in the car with her. (*Id.* at 20:24–31:13.) When the prosecutor asked Colligan if he "did anything to satisfy [himself] and her that [they] were both talking about the same person," Colligan testified that he printed a photograph of Petitioner on which Simms wrote "Michael Ramsey" and "M Dot," and she signed her name. (*Id.*) Detective Colligan identified S-10 as the photograph of Petitioner that Simms had signed. (*Id.*)

[7] The State introduced S-45 during its direct examination of Sergeant Frank Apisa. (*Id.* at 76:2–78:6.) Sergeant Apisa testified that he booked Petitioner and, as part of booking, took a picture of Petitioner's tattoo. (*Id.*) Sergeant Apisa identified S-45 as the picture he took of Petitioner's tattoo and testified that the tattoo had the words "M Dot" on it. (*Id.*)

the jury to conclude that the witnesses made a positive identification." (Habeas Pet. 10.)  Without more, this allegation is insufficient to carry Petitioner's burden.  *See Richter*, 562 U.S. at 103.

In fact, there was ample evidence, other than the photographs, from which the jury could have concluded that the witnesses positively identified Petitioner as who they described.  For example, Gary Marroquin and Dyshon Reeves identified Petitioner by name as the man they saw hanging out a car window with a gun moments before the shooting.  (Apr. 1, 2008 Trial Tr. at 36:7–10; 150:23–151:2.)  Likewise, Diana Williams and Eric Anderson initially identified the shooter by name as Petitioner.  *See Ramsey*, 1 A.3d at 797–99.

These identifications were corroborated by, among other things, relatively consistent testimonial evidence regarding what Petitioner was wearing on the day of the shooting.  For example, Curtis Prescott and Dyshon Reeves described the person they saw hanging out the car with a gun moments before the shooting as wearing a "blue shirt" and "some type of blue . . . [o]n his head."  (*Id.* at 157:22–158:7, 179:13–19).  Diana Williams described the shooter as wearing a "blue or black" shirt with a "black wave cap" or "do rag."  (Apr. 2, 2008 Trial Tr., ECF No. 7-14, at 95:6–25).  Detective Brian Stillwell, who was familiar with Petitioner prior to the shooting, testified that he saw Petitioner "two plus hours" prior to the shooting wearing a blue t-shirt.  (Mar. 31, 2008 Trial Tr., ECF No. 7-12, at 92:3–93:9.)  Eric Anderson testified and told police several days after the shooting that Petitioner was wearing a blue shirt and a blue do-rag on the day of the shooting.  (Apr. 1, 2008 Trial Tr. at 226:12–20.)  Stacia Simms testified that Petitioner was wearing a blue t-shirt and a blue head band on the day of the shooting.  (*Id.* at 109:21–110:5.)

The identifications were further corroborated by forensic evidence.  Petitioner's palm print was found on the back passenger window of the vehicle Stacia Simms' was driving.  *See Ramsey*, 1 A.3d at 798–99.

Accordingly, even if the trial court had excluded the photographs, Petitioner fails to demonstrate that there is a reasonable probability that the outcome of the case would have been different because there was ample other evidence from which the jury could have concluded that key witnesses positively identified Petitioner.  Therefore, the Court denies Petitioner relief on Ground Three.

### D. The Trial Court Erred in Failing to Instruct the Jury on Aggravated Manslaughter (Ground Four)

Finally, in Ground Four, Petitioner contends that the trial court erred in failing to include a jury instruction on aggravated manslaughter in addition to murder.[8]   (Habeas Pet. 11–12.) According to Petitioner:

> The trial judge told defense counsel . . . that he did not see any need for a lesser-included-offense instruction, and defense counsel agreed with that assessment.  As a result, aggravated manslaughter was never instructed to the jury, and instead, the case was presented as an all-or nothing choice between murder and acquittal.

> [As] there was a clear indication of a basis for a jury instruction on aggravated manslaughter . . . the failure to give such an instruction was plain error which should result in a reversal of [P]etitioner's murder conviction and a remand for a retrial.

(*Id.*)

---

[8] Under New Jersey law, criminal homicide constitutes aggravated manslaughter where the "actor recklessly causes death under circumstances manifesting extreme indifference to human life." N.J. Stat. § 2C:11-4(a)(1).  This requires that the State prove that the defendant was aware of and consciously disregarded a substantial risk of death and the defendant manifested extreme indifference to human life.  *State v. Cruz*, 163 N.J. 403, 416 (2000).

In contrast, murder occurs where an actor "purposely . . . [or] knowingly causes death or serious bodily injury resulting in death." N.J. Stat. §§ 2C:11-3(a)(1), (2).  This requires the State to prove, among other things, that defendant's conscious object was to cause serious bodily injury or that the defendant was aware that it was practically certain that his conduct would cause serious bodily injury that then resulted in the victim's death.  *Cruz*, 163 N.J. at 418.

To the extent Petitioner's claim asserts a due process violation under the federal Constitution, Petitioner failed to exhaust this claim before the state courts because he failed to put the state courts on notice that he was asserting a federal claim. *See McCandles*, 172 F.3d at 261.[9] Petitioner's direct appeal briefing relies on state law and fails to mention the federal Constitution or any judicial decision based on the federal Constitution. (Pet'r's Direct Appeal Br. 4–6.) The Court will, nonetheless, consider Petitioner's unexhausted claim *de novo*. *See Taylor*, 504 F.3d at 427.

The Supreme Court has never recognized that due process mandates lesser-included offense instructions in non-capital cases. *See Gilmore v. Taylor*, 508 U.S. 333, 342 (1993). Regardless, "due process requires that a lesser included offense instruction be given *only* when the evidence warrants such an instruction." *See Hopper v. Evans*, 456 U.S. 605 (1982) (emphasis added). Moreover, a trial court's finding as to whether the evidence at trial warranted an instruction is a finding of fact entitled to the Section 2254(d) presumption of correctness. *See Miller v. Fenton*, 474 U.S. 104, 112 (1985).

Here, the Appellate Division found on direct appeal that the evidence did not support an instruction on aggravated manslaughter. *Ramsey*, 1 A.3d at 805. Petitioner fails to rebut this presumption by clear and convincing evidence. (*See* Habeas Pet. 11–12.) In fact, Petitioner fails to point to any evidence that suggests that a jury could have rationally concluded that Petitioner was merely aware of and disregarded a substantial risk of death when he shot Terrell Spruill. (*See id.*) Thus, even on *de novo* review, the Court must accept the Appellate Division's finding as true,

---

[9] To the extent Petitioner alternatively argues that the trial court's failure to provide a jury instruction on aggravated manslaughter violated state law, such a claim is not viable in a federal habeas matter because an allegedly incorrect or omitted jury instruction under state law is not a basis for federal habeas relief. *See Estelle*, 502 U.S. at 63 ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

*see Miller*, 474 U.S. at 112; *Appel*, 250 F.3d at 210, and, as the evidence did not warrant a jury instruction on aggravated manslaughter, the Court denies Petitioner habeas relief on Ground Four.

## IV.   **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of a state court proceeding unless he has "made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). For the reasons expressed above, Petitioner's claims are all without merit and jurists of reason would not disagree with the Court's denial of Petitioner's habeas petition. Accordingly, Petitioner is denied a certificate of appealability.

## V.   **CONCLUSION**

For the reasons stated above, the Court will deny the Petition and will not issue a certificate of appealability. An appropriate order follows.[10]

Date: February 16, 2022

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[10] In his reply brief, Petitioner moves this Court for a stay and abeyance so that he may exhaust an ineffective assistance of trial counsel claim based on trial counsel's alleged failure to object to the qualifications of the State's expert in latent prints. (*See* Reply at 21–22.) The Court will deny Petitioner's motion because that claim is not properly before this Court. Petitioner did not raise that claim in his habeas petition, (*see* Habeas Pet.), or seek leave from this Court to amend the Petition to add that claim, *see* Fed. R. Civ. P. 15(a). Moreover, this Court need not, and will not, consider the merits of Petitioner's claim raised for the first time in his reply brief. *See, e.g.*, *Judge v. United States*, 119 F. Supp. 3d 270, 284 (D.N.J. 2015) (noting that a "moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief" and that "[t]his doctrine extends to the habeas context . . . .").